F I L E D
Clerk
District Court

JUN 28 2024

for the Northern Mariana Islands
By_____
*JP*
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | | |
|---|---|---|
| CHRISTOPHER LILLES, | ) | **Case No. 1:22-cv-00017** |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DECISION AND ORDER GRANTING** |
| v. | ) | **DEFENDANT'S MOTION TO DISMISS IN** |
| | ) | **PART, AND DENYING IT IN PART** |
| J.C. TENORIO ENTERPRISE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the Court is Defendant J.C. Tenorio Enterprise, Inc.'s ("JCT") Motion to Dismiss ("Mot.," ECF No. 8) Plaintiff Christopher Lilles's ("Lilles") Complaint (ECF No. 1) for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6) (Mem. of Law 9, 13, ECF No. 7).

In his Complaint, Lilles seeks declaratory and injunctive relief alleging five causes of action that: (1) the 2018 Workforce Act (the "Act"), 48 U.S.C. § 1806(d), requires JCT to pay a defined minimum wage to Lilles during the entirety of his employment; (2) the Act requires JCT to pay Lilles increases in the required minimum wage during the entirety of his employment; (3) Lilles is entitled to compensatory and monetary relief for lost wages and damages; (4) Lilles is entitled to punitive damages for JCT's failure to comply with the Act; and (5) JCT breached Lilles's employment contracts and implied covenants of good faith and fair dealing. (Compl. 7, 10-11, 14, 18-19.)

Lilles opposes ("Opp'n," ECF No. 9) JCT's Motion and argues to convert JCT's Motion into a motion for partial summary judgment pursuant to Rule 12(b)(6), which Lilles contends is appropriate because of "the provisions in Plaintiff's employment contracts." (Opp'n 5, 17.) JCT replied. (Reply, ECF No. 13.)

1

After reviewing and considering the record, the controlling law, and the parties' written and oral arguments, the Court hereby GRANTS IN PART, AND DENIES IN PART, JCT's Motion to dismiss Lilles's Complaint. Further, the Court GRANTS Lilles leave to amend his Complaint only as to the Fifth Cause of Action for Contract Three as defined herein.

## I.    FACTUAL BACKGROUND

### A.    Consolidated Natural Resources Act ("CNRA") of 2008

At the inception of the Commonwealth of the Northern Mariana Islands ("CNMI") in 1976, with the approval of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant") by the United States Congress and President, the immigration and naturalization laws of the United States generally did not apply to the CNMI. Covenant, Pub. L. No. 94–241, art. V, § 503, 90 Stat. 263 (codified as amended at 48 U.S.C. § 1801 (1998)). The Covenant allowed the CNMI to control its own immigration laws. In 2008, Congress passed the CNRA that amended the Covenant by making the CNMI part of the United States for purposes of the Immigration & Nationality Act. Pub. L. No. 110-229, Title VII, Subtitle A, 122 Stat. 754 (2008), 48 U.S.C. § 1806. In doing so, Congress recognized the need to avoid an abrupt transition into federal immigration. *See* CNRA of 2008 § 701(a)(2) (describing the need for special provisions "to minimize, to the greatest extent practicable, potential adverse economic and fiscal effects of phasing-out" CNMI immigration laws). For this reason, Congress created the Commonwealth Only Transitional Worker program and the provision of a transition period during which time the Secretary of Homeland Security ("Secretary"), along with other agency heads, could "establish, administer, and enforce a transition program to regulate immigration to the Commonwealth." *Id.* § 702(a); 48 U.S.C. § 1806.

The CNRA required the transition program to be implemented pursuant to regulations promulgated, as appropriate, by the head of each agency or department of the United States with

1   responsibilities under the transition program. Federal immigration law, with a few exceptions, became

2   applicable to the CNMI beginning on November 28, 2009. CNRA of 2008 § 702(a).

3        Part of this transition program involved creating a new category of nonimmigrant permit

4   pursuant to regulations. *Id*. § 702(d). This came to be known as the "CW-1 permit," which allows

5   aliens to enter the CNMI as a nonimmigrant CNMI-Only Transitional Worker ("CW-1"). 8 C.F.R. §

6   214.2(w). Under the transition program, the Secretary had discretion to create and enforce a system

7   for determining the number, terms, and conditions of CW-1 permits granted to prospective employers

8   for each nonimmigrant worker. CNRA of 2008 § 702(d). For instance, under the regulations

9   promulgated pursuant to the CNRA (and before the Act of 2018), CW-1 permits would ordinarily be

10  valid for up to one year. 8 C.F.R. § 214.2(w)(13).

11  **B.      The Workforce Act (48 U.S.C. § 1806(d))**

12       After the CNRA was enacted, Congress passed other legislation adding to and amending CW-

13  1 permit petition requirements. Relevant to this case is the July 24, 2018, passage of the 2018 U.S.

14  Workforce Act, Pub. L. 115-218 (2018), 48 U.S.C. § 1806(d), which amended the CNRA's

15  provisions. The Act made four major changes to the transition program that are pertinent to this case.

16  First, the CW-1 permit may be valid for up to three years. 48 U.S.C. § 1806(d)(7)(B). Second, the Act

17  now requires employers to apply to the U.S. Secretary of Labor ("SOL") for a temporary labor

18  certification ("TLC") confirming that (1) there are insufficient U.S. workers[1] willing, able, and

19  qualified to perform the services and (2) the nonimmigrant worker's employment would not adversely

20  affect the wages and working conditions of similarly employed U.S. workers. *Id*. § 1806(d)(2)(A)(i).

21  _____

22  [1] "The term 'United States worker' means any worker who is-- (A) a citizen or national of the United States; (B) an alien who has been lawfully admitted for permanent residence; or (C) a citizen of the Republic of the Marshall Islands, the Federated States of Micronesia, or the Republic of Palau (known collectively as the 'Freely Associated States') who has

23  been lawfully admitted to the United States pursuant to-- (i) section 141 of the Compact of Free Association between the Government of the United States and the Governments of the Marshall Islands and the Federated States of Micronesia (48 U.S.C. 1921 note); or (ii) section 141 of the Compact of Free Association between the United States and the Government of Palau (48 U.S.C. 1931 note)." 48 U.S.C. § 1806(i)(6).

1    As part of the process for an employer to acquire a TLC, the SOL must annually determine the

2    "prevailing wage" ("PWD") for the occupation in which the nonimmigrant worker would be

3    employed. *Id*. § 1806(d)(2)(B). To do this, the Office of Foreign Labor Certification ("OFLC")

4    determines the prevailing wage in the CNMI and occupational classification by using (1) the mean

5    hourly wage for the occupation the governor annually reports, (2) a survey that reports the mean wage

6    paid to workers in Guam, or (3) the mean wage paid to U.S. workers as compared to the mean wage

7    paid to workers in Guam. 20 C.F.R. § 655.410(b). The TLC confirms to U.S. Citizenship and

8    Immigration Services ("USCIS") that there is an insufficient number of qualified U.S. workers

9    available to fill the employer's job opportunity in the CNMI and that the employment of a CW-1

10   worker will not adversely affect the wages or working conditions of similarly employed U.S. workers.

11   (ECF No. 7-1.)

12   The third major change made by the Act, is that the employer must pay the CW-1 worker a

13   wage not less than the greater of (1) the federal minimum wage, (2) the statutory minimum wage of

14   the CNMI, or (3) the prevailing wage in the CNMI for the occupation in which the worker is employed.

15   48 U.S.C. § 1806(d)(2)(C). The regulations promulgated under the Act more specifically describe that

16   the employer's "offered wage in the work contract equal[] or exceed[] the highest of the prevailing

17   wage, Federal minimum wage, or Commonwealth minimum wage. The employer must pay *at least*

18   *the offered wage*, free and clear, *during the entire period* of the CW-1 Application for Temporary

19   Employment Certification granted by OFLC." 20 C.F.R. § 655.423(a)(1) (emphasis added).

20   Fourth, the Act's requirements applies to petitions for CW-1 permits "[b]eginning with

21   petitions filed with employment start dates in fiscal year [("FY")] 2020." 48 U.S.C. §

22   1806(d)(2)(A)(i). The outlined procedures in petitioning a CW-1 nonimmigrant worker pursuant to

23   the Act took effect on April 4, 2019 under the DOL's Interim Final Rules. (Labor Certification

Process, ECF No. 7-2); Labor Certification Process, 84 Fed. Reg. 12380, 12380 (Apr. 1, 2019) (to be

codified at 20 C.F.R. pt. 655). The mandates thereof, including the procurement of a TLC and a PWD, would therefore apply to all petitions filed by prospective employers with a CW-1 worker's employment start date on or after October 1, 2019. 48 U.S.C. § 1806(d)(2)(A)(i).

"As a condition of receiving a TLC [from DOL's OFLC], employers are required to protect the employment of both CW-1 workers and U.S. workers in corresponding employment, such as . . . requiring that U.S. workers in corresponding employment receive the same wages and benefits as the CW-1 workers." (Labor Certification Process 3); *see also* Labor Certification Process, 84 Fed. Reg. at 12381.

After receiving the TLC and completing other requirements, "the prospective employer may submit a petition to the Secretary for a [CW-1] permit on behalf of the nonimmigrant worker." 48 U.S.C. § 1806(d)(2)(A)(ii). The Secretary is authorized to revoke a permit for good cause if an employer fails to pay the nonimmigrant worker. *Id*. § 1806(d)(3)(D)(iii)(I)(aa).

**C.    The CW-1 Petitions for Lilles**

Lilles, a citizen of the Philippines, worked for JCT beginning on October 1, 2017. (Compl. ¶ 19, 66.) At the time of the Act's enactment, Lilles had CW-1 nonimmigrant status and an employment contract with JCT for the period of October 1, 2018 to September 30, 2019. (Compl. ¶ 67; "Contract One" 1, 3, ECF No. 9-3.) On July 5, 2019, JCT began the renewal process for a CW-1 petition to employ Lilles starting October 1, 2019, and therefore JCT was obligated to follow the procedures required under the Act. (Compl. ¶¶ 72-73.)

After JCT obtained a PWD of $10.64 per hour, a TLC, and a certification of employment from the SOL for its petition for Lilles's CW-1 permit from October 1, 2019 to September 30, 2020, JCT then changed course and filed a new CW-1 petition pursuant to the requirements predating the Act's regulations. (*Id.* ¶¶ 72-74.) To do this, JCT filed the CW-1 petition with an employment start date before FY 2020—September 29, 2019. (*Id.*) This petition was granted by the Secretary which allowed

1    JCT to pay Lilles a rate of $7.25 per hour based on the employment contract terms, as well as the law

2    and regulations in effect before the Act. (*Id.*; "Contract Two", ECF No. 9-4.)

3            JCT then sought to renew Lilles's contract under the Act and new regulations in September

4    2020. (Compl. ¶ 80.) JCT petitioned for Lilles a three-year CW-1 permit at a wage rate of $10.64 per

5    hour pursuant to the Act, its regulations, and the PWD in effect at the proposed start date of September

6    29, 2020. (*Id.* ¶¶ 79, 85; "Contract Three," ECF No. 7-14.) This is Lilles's status through September

7    28, 2023. (Compl. ¶ 21.)

8    **II.    PROCEDURAL BACKGROUND**

9            Lilles initiated this action asserting federal question jurisdiction pursuant to 28 U.S.C. § 1331.

10   (*Id.* ¶ 23.) He seeks to enforce his purported rights under the 2018 Act, which Lilles alleges the Court's

11   federal question jurisdiction is grounded in. (*Id.* ¶ 24.) Lilles's claims for relief include declaratory

12   and injunctive relief that: (1) the Act, 48 U.S.C. § 1806(d), requires JCT to pay a defined minimum

13   wage to Lilles during the entirety of his employment (*id.* ¶ 45 ("First Cause of Action")); (2) the Act

14   requires JCT to pay Lilles increases in the required minimum wage during the entirety of his

15   employment (*id.* ¶ 58 ("Second Cause of Action")); (3) Lilles is entitled to compensatory and

16   monetary relief for lost wages and damages (*id.* ¶ 64 ("Third Cause of Action")); (4) Lilles is entitled

17   to punitive damages for JCT's failure to comply with the Act (*id.* ¶ 89 ("Fourth Cause of Action"));

18   and (5) JCT breached Lilles's employment contracts pursuant to the Act (*id.* ¶ 101 ("Fifth Cause of

19   Action")).

20           Lilles's three employment contracts ("Employment Contracts") with JCT cover the dates from

21   May 9, 2019 to November 29, 2022. Each of the contracts are dated as follows: (1) October 1, 2018

22   to September 30, 2019 (Compl. ¶ 67; Contract One); (2) September 29, 2019 to September 28, 2020

23   (Compl. ¶ 73; Contract Two); and (3) September 29, 2020 to September 28, 2023 (Compl. ¶ 84-86;

     Contract Three). Notably, Lilles asserts in his Complaint that for Contract Three, JCT "without the

knowledge or consent of Plaintiff, attached thereto a signature purporting to be that of Plaintiff's when in fact Plaintiff did not sign the employment contract." (Compl. ¶ 86.)

JCT argues "Plaintiff has failed to state a claim showing a legal wrong because Defendant was complying with federal law and regulations by paying the wage set forth in the TLC for Plaintiff's employment period." (Mem. of Law 13.) In summary, JCT argues that it has not violated the Act, and therefore Lilles fails to state a claim on which the Court may grant relief. (Mem. of Law 13, 20, 22.) In his Opposition to JCT's motion, Lilles moves for summary judgment by requesting conversion under Rule 12(d). (Opp'n 1.) Defendant JCT replied. (Reply 1.)

## III.   LEGAL STANDARD

### A.      Rule 12(b)(1) Motion to Dismiss

A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rule 12(b)(1) motions are either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack does not challenge the veracity of the plaintiff's allegations, but instead asserts that they "are insufficient on their face to invoke federal jurisdiction." *Id*. Conversely, a defendant bringing a factual attack disputes the truthfulness of the allegations underlying federal jurisdiction. *Id*. In factual attacks, the district court may review evidence beyond the complaint, and need not presume the truthfulness of the plaintiff's allegations. *Id*. (citations omitted). When a defendant does present affidavits or other evidence to factually attack jurisdiction, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. *Id*. Here, JCT attacks Lilles's Complaint factually. (Reply 8.)

### B.      Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a pleading "must contain sufficient

1    factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

2    *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The

3    factual allegations need not be detailed, but a plaintiff must provide "more than an unadorned, the-

4    defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "For purposes of ruling on a

5    Rule 12(b)(6) motion, the Court 'accept[s] factual allegations in the complaint as true and construe[s]

6    the pleadings in the light most favorable to the nonmoving party.'" *P&G v. QuantifiCare Inc.*, 288 F.

7    Supp. 3d 1002, 1010 (N.D. Cal. 2017) (quoting *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519

8    F.3d 1025, 1031 (9th Cir. 2008)). In determining whether a motion to dismiss should be granted, there

9    is a two-step process: first, "by identifying pleadings that, because they are no more than conclusions,

10   are not entitled to the assumption of truth," and second, "[w]hen there are well-pleaded factual

11   allegations, a court should assume their veracity and then determine whether they plausibly give rise

12   to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

13   Generally, when ruling on a 12(b)(6) motion, a court may consider only the pleadings and

14   limited materials, such as "documents attached to the complaint, documents incorporated by reference

15   in the complaint, or matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

16   2003). If a court considers other evidence, "it must normally convert the 12(b)(6) motion into a Rule

17   56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond."

18   *Id.* at 907.

19   **C.    Federal Question Jurisdiction Under *Grable***

20   Federal district courts generally have subject matter jurisdiction over civil cases through

21   diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331. District

22   courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or

23   treaties of the United States." 28 U.S.C. § 1331. However, a suit to enforce a right that has origins in

United States' laws "'is not necessarily, or for that reason alone, one arising under those laws, for a

suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law upon the determination of which the result depends.'" *Littell v. Nakai*, 344 F.2d 486, 488 (9th Cir. 1965) (quoting *Schulthis v. McDougal*, 225 U.S. 561, 569 (1912)). "The federal nature of the right to be established is decisive-not the source of the authority to establish it." *People of P.R. v. Russel & Co., Sucesores S. En. C.*, 288 U.S. 476, 483 (1933) (citations omitted).

District courts typically apply the "well-pleaded complaint" rule to determine whether a cause of action is created by federal law. *Rainero v. Archon Corp.*, 844 F.3d 832, 836-37 (9th Cir. 2016); *California v. United States*, 215 F.3d 1005, 1014 (9th Cir. 2000). Federal jurisdiction exists under the "well-pleaded complaint" rule when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Rainero*, 844 F.3d at 836-37; *California*, 215 F.3d at 1014. "The 'well-pleaded complaint' rule is subject to several exceptions." *Osceola Blackwood Ivory Gaming Grp., LLC v. Picayune Rancheria of Chukchansi Indians*, 272 F. Supp. 3d 1205, 1211 (E.D. Cal. 2017) (citing *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 687 (9th Cir. 2007)).

Federal question jurisdiction may exist if a claim necessarily requires resolution of a substantial question of federal law. *See Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945, 949 (9th Cir. 2004). "A state law claim implicates substantial questions of federal law if the federal issue is (i) necessarily raised, (ii) actually disputed, (iii) substantial, and (iv) capable of resolution in a federal court without disrupting the federal-state balance of power." *Osceola Blackwood Ivory Gaming Grp., LLC* 272 F. Supp. 3d at 1211 (citing *Gunn v. Minton*, 568 U.S. 251, 251 (2013); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 674 (9th Cir. 2012)).

**IV.   ISSUE**

The issue in this case is whether Lilles, a Commonwealth Only Transitional worker employed by JCT beginning in 2017 and through his last contract period ending in 2023, is entitled to receive

1    an increase in his wage rate pursuant to the 2018 Act's provision defining minimum wage to include

2    the prevailing wage for his position and any increases therein as determined by the SOL, beginning

3    with the first prevailing wage determination issued by the SOL in May 2019. Based on the Court's

4    review of the Act and the terms of his first two employment contracts that commenced prior to October

5    1, 2019, the Court concludes that he is not entitled to the Act's prevailing wage rate. As for the third

6    employment contract that commenced on September 28, 2020, the Court does not have federal

7    question jurisdiction and therefore does not render a decision on this claim.

8    **V.     ANALYSIS**

9         Lilles contends that the Court has federal subject matter jurisdiction pursuant to the Act

10    because "technically" he has a right to sue under the Act—in essence, that Congress created a private

11    cause of action pursuant to the Act. (Opp'n 12.) JCT argues the Act does not create such a cause of

12    action and, even if it did create a private cause of action, JCT has complied with the terms of the

13    Employment Contracts as interpreted under the Act and its regulations; therefore, Lilles has failed to

14    state a claim for which the Court may grant relief. (Mem. of Law 20-23.) The Court finds that the Act

15    itself does not contain a private right of action. The Court therefore dismisses the first through the

16    fourth causes of action in the Complaint without leave to amend because they allege violations of the

17    Act as a basis for the cause of action, which in and of itself does not confer federal subject matter

18    jurisdiction to the Court.

19         As to the Fifth Cause of Action under state law, breach of the three Employment Contracts,

20    Lilles's claim raises a "substantial question" of federal law which warrants federal question

21    jurisdiction. (Opp'n 1.) The Court finds that the substantial question of federal law raised through

22    Lilles's breach of contract as to Contracts One and Two meet the requirements for federal question

23    jurisdiction under U.S. Supreme Court case *Grable & Sons Metal Products, Inc. v. Darue Engineering*

    *& Manufacturing*, 545 U.S. 308 (2005) and subsequent case law. However, the Court finds that Lilles

1    fails to state a claim for which the Court may grant relief pursuant to Rule 12(b)(6) as to Contracts

2    One and Two, because Lilles entered into those Contracts without satisfying the timing and underlying

3    prerequisites of the Act. As to Contract Three, the Court finds that pursuant to *Grable*, the Court does

4    not have federal question jurisdiction. The Court therefore grants JCT's Motion as to the Fifth Cause

5    of Action but with leave for Lilles to amend his cause of action for Contract Three only.

6    **A.     The Workforce Act Does Not Include a Private Right of Action**

7          The Supreme Court has long recognized that "private rights of action to enforce federal law

8    must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) (citing *Touche Ross*

9    *& Co. v. Redington*, 442 U.S. 560, 578 (1979)). Therefore, "[t]he judicial task is to interpret the statute

10   Congress has passed to determine whether it displays an intent to create not just a private right but

11   also a private remedy." *Id.* (citing *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15

12   (1979)).

13         A statute may expressly or impliedly create a private right of action. *Transamerica Mortg.*

14   *Advisors, Inc.*, 444 U.S. at 15. An express private right of action exists where a statute specifies that

15   a private litigant may bring a lawsuit to vindicate the rights described in a statute. *See, e.g.*, *In re*

16   *Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1230 (9th Cir. 2008). If a statute does not create an

17   express private right of action, "a plaintiff can maintain a suit only if 'Congress intended to provide

18   the plaintiff with a[n implied] private right of action.'" *Id.* (quoting *First Pac. Bancorp, Inc. v. Helfer*,

19   224 F.3d 1117, 1121 (9th Cir. 2000)).

20         "Judicial implication of a private right of action under a statute which does not expressly create

21   one is a matter of statutory construction." *Osborn v. Am. Ass'n of Retired Persons*, 660 F.2d 740, 742

22   (9th Cir. 1981) (citing *Transamerica Mortg. Advisor, Inc.*, 444 U.S. at 15; *Touche Ross & Co.*, 442

23   U.S. at 568; *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979)). Courts begin their inquiry by

looking at the text and structure of the statute. *Sandoval*, 532 U.S. at 288.

1    Statutory language that creates a right or duty is generally the most accurate indicator of the

2    "implication of a cause of action." *Cannon*, 441 U.S. at 690 n.13. "Factors relevant to evaluation of

3    congressional intent are 'the language of the statute itself, its legislative history, the underlying

4    purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede

5    or to supplement existing State remedies.'" *Osborn*, 660 F.2d at 743 (quoting *Nw. Airlines Inc. v.*

6    *Transp. Workers Union*, 451 U.S. 77, 91 (1981)) (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)).

7    Beginning with the language of the statute, the Act reads in relevant part: "An employer shall

8    pay each Commonwealth Only Transitional Worker a wage that is not less than the greater of--(i) the

9    statutory minimum wage in the Commonwealth; (ii) the Federal minimum wage; or (iii) the prevailing

10    wage in the Commonwealth for the occupation in which the worker is employed." 48 U.S.C. § 1806

11    (d)(2)(C)(i)-(iii).

12    From the plain text, section 1806 imposes a duty on the employer that confers a benefit to the

13    CW-1 worker under the Act. "To permit implication of a private right of action, however, the language

14    of the statute in question must do more than confer benefits, for '(t)he question is not simply who

15    would benefit . . . but whether Congress intended to confer federal rights upon these beneficiaries.'"

16    *Osborn*, 660 F.2d at 743 (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).

17    The Ninth Circuit "look[s] to see whether Congress designated a method of enforcement other

18    than through private lawsuits, because '[t]he express provision of one method of enforcing a

19    substantive rule suggests that Congress intended to preclude others.'" *Northstar Fin. Advisors, Inc. v.*

20    *Schwab Invs.*, 615 F.3d 1106, 1115 (9th Cir. 2010) (quoting *Sandoval*, 532 U.S. at 290). Based on the

21    provisions of the Act, Congress designated the SOL to determine the prevailing wage in the

22    Commonwealth. 48 U.S.C. § 1806. "In general . . . the Secretary of Labor shall use, or make available

23    to employers, an occupational wage survey conducted by the Governor that the Secretary of Labor

has determined meets the statistical standards for determining prevailing wages in the Commonwealth

on an annual basis." *Id*. § 1806(d)(2)(B)(i). Additionally, "[t]he Secretary shall establish a system for each employer . . . to submit a semiannual report to the Secretary and Secretary of Labor that provides evidence to verify . . . payment of such worker *under the terms and conditions set forth in the permit petition* that the employer filed on behalf of such worker." *Id*. § 1806(d)(3)(D)(ii) (emphasis added). The only language Congress included in the Act that addresses what happens if an employer is not paying an employee his required wage is under the revocation permit process. "The Secretary, in the Secretary's discretion, may revoke a permit . . . for good cause, including if . . . the employer . . . fails to pay the subject worker [or] commits any other violation of the terms and conditions of employment . . . ." *Id*. § 1806(d)(3)(D)(iii)(I)(aa).

Congress conferred rights upon the Secretary to take action if an employer is not complying with the Act—specifically if the employer is not paying the required statutory wages. However, Congress did not write similar clear language conferring any right for the CW-1 worker to take action against the employer in the event the employer fails to pay the required statutory wages under the Act. Therefore, the language of the Act does not expressly confer a private right of action to CW-1 workers.

Next, the Court turns to the Act's statutory purpose in considering if Congress created an implied private right of action for the nonimmigrant worker. Congress dictated its purpose for the Act as:

> (1) to increase the percentage of United States workers . . . in the total workforce of the [CNMI], while maintaining the minimum number of workers who are not United States workers to meet the changing demands of the Northern Mariana Islands' economy; (2) to encourage the hiring of United States workers into such workforce; and (3) to ensure that no United States worker—(A) is at a competitive disadvantage for employment compared to a worker who is not a United States worker; or (B) is displaced by a worker who is not a United States worker.

Pub. L. 115-218, 132 Stat. 1547 (2018).

The Court finds that Congress's detailed purpose of the Act does not support a finding that Congress intended to create a private right of action for nonimmigrant CW-1 workers. In fact, the

purpose focuses primarily on the benefits conferred to U.S. workers rather than the benefits to CW-1 workers. Based on these two factors, the Court concludes the Act does not create a private right of action and therefore does not confer federal question jurisdiction to the CW-1 worker plaintiff. Accordingly, Lilles's first through fourth causes of action in his Complaint lack federal question jurisdiction and are therefore dismissed.

**B.    Lilles's State Law Cause of Action for Contracts One and Two Raise a Substantial Federal Question But Contract Three Does Not**

Lilles raises a state law claim for breach of contract and implied covenant of good faith and fair dealing in his Fifth Cause of Action. (Compl. ¶ 92, 96.) "[A] state law claim presents a justiciable federal question under *Grable* 'only if it satisfies *both* the well-pleaded complaint rule *and* passes the implicates significant federal issues test.'" *Newtok Village v. Patrick*, 21 F.4th 608, 619 (9th Cir. 2021) (quoting *Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011)).

Federal jurisdiction exists over a state law claim if a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. The Court finds Lilles does not satisfy all four elements of the *Grable* test.

**1.    *Grable* Factor One: Federal Issue Necessarily Raised**

The Ninth Circuit Court of Appeals has found that there is not a federal issue necessarily raised when "[t]here is no 'basic' or 'pivotal' federal question that impinges on [the plaintiff's] right to relief." *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1046 (9th Cir. 2003) (citing *Roskind v. Morgan Stanley Dean Witter & Co.*, 165 F. Supp. 2d 1059, 1067 (N.D. Cal. 2001)); *see Nevada*, 672 F.3d at 675 ("The federal issues here are not 'pivotal' to [this] case.") Further, in determining if a federal issue is "*necessarily raised* within the meaning of *Grable*," the Ninth Circuit considers if the

14

1    federal issue is an "essential *element*" of the plaintiff's claims. *Negrete v. City of Oakland*, 46 F.4th

2    811, 819 (9th Cir. 2022) (citing *Grable*, 545 U.S. at 314-15).

3          The Court finds that Lilles "necessarily" raises a federal issue, and it is an essential element

4    for Lilles's cause of action for the alleged breaches of employment Contracts One and Two. For a

5    breach of contract claim, CNMI law requires a plaintiff to demonstrate: "(1) the existence of a valid

6    contract; (2) the breach of an obligation imposed under the contract; and (3) damages to the plaintiff

7    resulting from the breach." *Pac. Rim Land Dev., LLC v. Imperial Pac. Int'l (CNMI), LLC*, No. 19-cv-

8    00016, 2020 WL 1942454, at *5 (N. Mar. I. Apr. 23, 2020).

9          Here, Lilles asserts a breach of contract claim for three contracts dating from May 9, 2019,

10   when the first PWD was issued, to the date of filing of his Complaint on November 29, 2022. In the

11   first two contracts which both commenced prior to October 1, 2019, the wage rate provision states:

12        WAGE RATE: <u>$7.25 per hour</u> and 1.5 times that rate for overtime unless exempt.
          If the wage rate stated above is less than any increase in *the applicable minimum*
13        *wage* that is implemented during the term of this contract, the new minimum wage
          shall apply to work performed under this contract on and after the effective date of
14        the increase.

15   (Contract One 1 (emphasis added); Contract Two 1 (emphasis added).) The Act defines "minimum

16   wage" for each Commonwealth Only Transitional Worker as a wage that is not less than the greater

17   of (1) the federal minimum wage, (2) the statutory minimum wage of the CNMI, or (3) the prevailing

18   wage in the CNMI for the occupation in which the worker is employed. 48 U.S.C. § 1806(d)(2)(C).

19         Lilles alleges that because of "Defendant's failure and refusal to increase the hourly wage

20   being paid to Plaintiff at every instance the 'prevailing wage' hourly rate increased, Defendant

21   breached and defaulted in the terms of the several employment contracts with Plaintiff which were in

22   effect between May 9, 2019, to the date hereof." (Compl. ¶¶ 95-96.) Lilles contends that the

23   "applicable minimum wage" for each one of his Employment Contracts from May 9, 2019 to the filing

     of his Complaint was the prevailing wage "set forth in the published 'prevailing wage' tables for the

category in which he was working" pursuant to the Act. (*See id*. ¶ 94.) In particular, the first contract was in effect from October 1, 2018 to September 30, 2019 (Compl. ¶ 67; Contract One); the second contract was in effect from September 29, 2019 to September 28, 2020 (Compl. ¶ 73; Contract Two); and the third contract was in effect from September 29, 2020 to September 28, 2023 (Compl. ¶ 84-86; Contract Three). As for the third contract, Lilles notably asserts that JCT, "without the knowledge or consent of Plaintiff, attached thereto a signature purporting to be that of Plaintiff's when in fact Plaintiff did not sign the employment contract." (Compl. ¶ 86; Lilles Decl. ¶ 8, ECF 9-1.)

"Breach of a contract occurs upon the nonperformance of a contractual duty of immediate performance." *Pac. Rim Land Dev., LLC*, 2020 WL 1942454, at *5 (quoting *Manglona v. Baza*, 2012 MP 4 ¶ 13). Lilles alleges the breach of his three Employment Contracts. As to Contracts One and Two, they necessarily stand or fail based on the Court's interpretation and application of the Act to these contracts—in particular, whether the prevailing wage under the Act constitutes the applicable minimum wage that Lilles is entitled to under his Employment Contracts and thus whether JCT's failure to pay the increases in the PWD constitutes breach of his Employment Contracts.

As to Contract Three, Lilles alleges possible fraud or forgery with regards to the employment contract, raising issues of validity of the contract in his Complaint. In order to prevail on a breach of contract claim, Lilles must establish the existence of a valid contract, but Lilles's allegation in his Complaint means he may be able to recover damages under a different or alternative theory other than violation of the Act for Contract Three. Thus, the breach of contract cause of action for Contract Three does not necessarily raise a federal issue.[2]

---

[2] At the hearing on this matter, Lilles stated that he no longer argues this legal theory of fraud or forgery but never made a motion to amend his Complaint. Therefore, the Court grants leave to amend his Complaint as to Lilles's Fifth Cause of Action for Contract Three only.

"[E]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Manglona*, 2012 MP 4 ¶ 16 (citing *Del Rosario v. Camacho*, 2001 MP 3 ¶ 99). "The implied covenant of good faith and fair dealing only requires that neither party do anything that will injure the other party's right to receive the benefits of the agreement." *Id.* ¶ 18 (citing *Del Rosario*, 2001 MP ¶ 99).The Court finds that its interpretation of whether Lilles was entitled to the prevailing wage pursuant to the Act as the applicable minimum wage under his Employment Contracts is pivotal in his cause of action for breach of the implied covenant of good faith and fair dealing. Thus, for Contracts One and Two, Lilles necessarily raises a federal issue for violation of the implied covenant of good faith and fair dealing for those respective contracts. As to Contract Three, Lilles faces the same issues outlined above in that he alleges that JCT forged his signature (Compl. ¶ 86) and therefore does not fall within the federal issue jurisdiction.

## 2.    *Grable* Factor Two: Actually Disputed

The statute at issue here is the Act, which Congress enacted as an amendment to the Covenant's provisions. JCT actually disputes whether Lilles is entitled to the prevailing wage as defined under the Act and its increases thereof during the course of Lilles's Employment Contracts. JCT argues that if the CNMI statutory minimum wage "or the Federal minimum wage had increased over the PWD set forth in the September 29, 2020-September 28, 2023 Employment Contract and the work permit for that period, then Defendant would have paid that increase in the applicable minimum wage for CNMI statutory minimum wage or Federal minimum wage." (Reply 7.) JCT further argues:

> Plaintiff's real issue is that the NMI Workforce Act provided for a prevailing wage determination during the term of employment, and Subpart E only provides for one prevailing wage determination and one TLC, for one period of employment, in order to file one CW-1 petition for up to one period of three years.

(Mem. of Law 12.) Lilles contends that he is entitled to the prevailing wage and the increases of that wage as defined under and pursuant to the Act. (Opp'n 26.) JCT recognizes this dispute between the

parties when it states that "Plaintiff requests the Court to interpret the Act and 20 CFR § 655.400, Subpart E, in a manner which supports his contention that his hourly wage should increase with each fluctuation of the prevailing wage." (*Id.*) As such, the Court finds that the second *Grable* factor of an actual dispute is satisfied as to all three Employment Contracts.

### 3. *Grable* Factors Three and Four: Substantial and Capable of Resolution in Federal Court Without Disrupting the Federal-State Balance Approved by Congress

The disputed federal question qualifies as substantial if its resolution is both dispositive of the case and would be controlling in numerous other cases. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006); *see also City of Oakland v. BP PLC*, 969 F.3d 895, 905 (9th Cir. 2020). "By contrast, a federal issue is not substantial if it is 'fact-bound and situation specific,' or raises only a hypothetical question unlikely to affect interpretations of federal law in the future." *City of Oakland*, 969 F.3d at 905 (first quoting *Empire Healthchoice*, 547 U.S. at 700; and then citing *Gunn*, 568 U.S. at 261). "A federal issue is not substantial merely because of its novelty, or because it will further a uniform interpretation of a federal statute." *Id.* (first citing *Gunn*, 568 U.S. at 262, and then citing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 815-16 (1986)). "The inquiry under *Grable* often focuses on [this] third requirement." *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 747 (9th Cir. 2022).

In this instance, a decision whether Lilles is entitled to the prevailing wage as it increases pursuant to the Act during the terms of Lilles's Employment Contracts would not only resolve this case but would also control in numerous other cases involving CW-1 permit workers in the CNMI. Although novelty of the issue does not justify the Court finding there is federal question jurisdiction, *Gunn*, 568 U.S. at 262, this is a case of first impression. Interpretation of which wage is applicable during the term of Lilles's employment under the Act will control as to future similar claims in the CNMI. The Court examines Lilles's Employment Contracts, but his contracts are not so unique as to

1    make this Court's determination fact-bound and situation specific. As such, the Court finds that the

2    federal issue is substantive.

3           The Ninth Circuit in *Hornish v. King County* looked to the purpose of the federal statute at

4    issue and the federal statutes preclusion of state laws regarding the subject of the federal regulation to

5    determine if the fourth *Grable* factor was satisfied. 899 F.3d 680, 690-91 (9th Cir. 2018). The Ninth

6    Circuit found that resolution in federal court would not disrupt the federal-state balance approved by

7    Congress. *Id.* Here, Congress dictated its purpose for the Act that focused on the impact and benefits

8    conferred to U.S. workers. *See* Pub. L. 115-218, 132 Stat. 1547 (2018). The United States has a strong

9    interest in ensuring that non-U.S. workers are paid the applicable wage under the Act to ensure that

10   U.S. workers are not at a competitive disadvantage—in particular, to ensure that a non-U.S. worker's

11   hourly wage does not undercut the prevailing wage for employment in the CNMI that would otherwise

12   be available to U.S. workers. Further, Congress effectively *precluded the operation of state law when*

13   *the prevailing wage or federal minimum wage is higher than the statutory minimum wage in the*

14   *CNMI. See* 48 U.S.C. § 1806(d)(2)(C). Therefore, the federal issue disputed in this case is "an

15   important issue of federal law that sensibly belongs in a federal court." *Grable*, 545 U.S. at 315.

16          Lilles alerted the Court to the CNMI DOL's Administrative Hearing Officer's order in *Lowe*

17   *v. J.C. Tenorio Enterprises, Inc.*, Labor Case No. 20-018 (Aug. 28, 2020), to support the conclusion

18   that the federal-state balance would not be disrupted through this Court's exercising of federal subject

19   matter jurisdiction. (ECF No. 9-8.) In *Lowe*, the complainant filed a wage and hour claim against J.C.

20   Tenorio Enterprise, Inc., the named defendant in this action, alleging that he was entitled to the

21   prevailing wage for his employment, even though he was a U.S. citizen and not a CW-1 worker. (*Id.*

22   at 1.) The CNMI DOL Administrative Hearing Officer found that there was no CNMI wage law that

23   mandated the complainant's employer to pay the prevailing wage rate to the U.S. worker and dismissed

     the case. (*Id.* at 2.) According to its express purpose, the intent of the Act clearly is to benefit U.S.

citizens. Despite this, the CNMI DOL asserts it has no jurisdiction over the U.S. worker's claim to the prevailing wage rate pay. As such, this Court's decision to assert jurisdiction over Lilles's breach of contract claim will not infringe on the state-federal balance. The *Lowe* order supports the proposition that the Act's minimum wage provision only applies to CW-1 workers and that if a U.S. worker had the same contractual terms as Lilles the Court would not interpret the U.S. worker's contract to fall within the ambit of the Act's minimum wage provision.

The Court therefore concludes that it has federal question jurisdiction for Contracts One and Two because Lilles's cause of action for breach of contract as to Contracts One and Two satisfy the *Grable* requirements; Contract Three does not satisfy the first *Grable* requirement because Lilles alleges an alternative legal theory, and therefore the Court does not have federal question jurisdiction over the Fifth Cause of Action for Contract Three.

**C.    Lilles Does Not State a Claim for Which Relief May Be Granted as to the Breach of Contract Claim for Contracts One and Two**

The mandates pursuant to the Act would apply to "*petitions filed with employment start dates in fiscal year 2020.*" 48 U.S.C. § 1806(d)(2)(A)(i) (emphasis added). The petition will not be approved unless a TLC is submitted with the petition and received by the Secretary. *Id.* § 1806(d)(2)(A)(ii). When an employer files a petition for a CW-1 worker pursuant to the Act, the employer knows the worker's applicable prevailing wage and agrees to comply with the Act's definition of "minimum wage." Here, Lilles's Employment Contract One, for the dates of October 1, 2018 to September 30, 2019, was from a CW-1 petition filed for a period of employment that commenced prior to FY 2020. In fact, it expired before the Act's requirements regarding petitions went into effect. *See id.* As such, the Court finds that Lilles does not state a claim for which relief may be granted as to the Fifth Cause of Action for Contract One because Contract One fails to meet the timing provision and prerequisites of the Act.

1          As to Contract Two, Lilles also entered into the contract for a commencement date before the

2   Act's petition requirements took effect and is therefore not entitled to the Act's minimum wage

3   benefits. It appears the Secretary recognized this fact as such because Lille's approved Contract Two

4   has the current federal and CNMI minimum wage rate at $7.25 an hour. (Contract Two 1.) Therefore,

5   the Court finds that Lilles also does not state a claim for which relief may be granted as to Contract

6   Two.

7   **VI.     CONCLUSION**

8          Based on the foregoing, the Court grants JCT's Motion to dismiss for lack of subject matter

9   jurisdiction as to the first through fourth causes of action in the Complaint because Lilles does not

10  have a private right of action under the Act. However, the Court concludes it has federal subject matter

11  jurisdiction over the Fifth Cause of Action for breach of contract as to Contracts One and Two under

12  *Grable*. The federal question before the Court is one of immigration law, pursuant to the Act,

13  imbedded in the breach of contract claim. Nevertheless, the Court grants JCT's Motion to dismiss for

14  failure to state a claim as to the Fifth Cause of Action for Contracts One and Two pursuant to Rule

15  12(b)(6), because the terms of Lilles's employment contract indicate Lilles fails to meet the timing

16  requirement and the underlying prerequisites of the Act. His CW-1 permit was not issued pursuant to

17  a petition that complied with the Act. Finally, the Court grants JCT's Motion to dismiss the Fifth

18  Cause of Action for Contract Three pursuant to Rule 12(b)(1), because Lilles fails to satisfy all *Grable*

19  factors—in particular, he raises an alternative legal theory under which he may seek relief, and

20  therefore the federal issue is not necessarily raised. The Court does however grant Lilles leave to

21  amend his Complaint as to the Fifth Cause of Action for Contract Three only.

22         IT IS SO ORDERED on this 28th day of June 2024.

23

                            RAMONA V. MANGLONA
                            Chief Judge